**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Orlando James VIGI,**
**Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Betty ERDMAN et al.,**
**Defendants-Appellants.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Dave PALMER and Nick Frank**
**Flowery, Defendants-Appellants.**

**Nos. 74–1748 to 74–1750.**

United States Court of Appeals,
Sixth Circuit.

April 30, 1975.

See also D.C., 350 F.Supp. 1008, 363 F.Supp. 314.

292

James E. Roberts, William J. Richards, John W. Tapp, Detroit, Mich., for defendants-appellants Erdman, Flowery, Palmer and others.

James K. O'Malley, Pittsburgh, Pa., for defendant-appellant Vigi.

Ralph B. Guy, U. S. Atty., Detroit, Mich., Judith A. Metzner, Marc Philip Richman, Crim. Appellate Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before LIVELY and ENGEL, Circuit Judges, and MILES,* District Judge.

LIVELY, Circuit Judge.

Five of the appellants in this case were convicted by a jury of violating 18 U.S.C. § 371 by engaging in a conspiracy to conduct a gambling business which was illegal under Michigan law, and of the substantive offense of conducting such a business in violation of 18 U.S.C. § 1955. The other appellant, Betty Erdman, was convicted on the conspiracy count but was acquitted of the substantive charges. Three codefendants were acquitted of both conspiracy and violation of § 1955. Since it is not contended that the evidence which was admitted was not sufficient to support the jury verdict, no recitation of facts will be made except as required to deal with the legal issues raised on appeal.

The evidence of participation by appellants in illegal gambling activities in the Detroit area consisted in major part of transcripts of intercepted telephone conversations. The defendants moved in the district court to suppress all such evidence, inter alia, on the ground that the authorization for the Department of Justice attorney to make application for an intercept order contained in a letter from Henry E. Petersen, who was acting assistant attorney general at the time, was insufficient on its face. This letter identified Mr. Petersen as the person who made the decision to authorize the application. It was claimed in the district court and is contended on appeal that Acting Assistant Attorney General Petersen was not empowered under 18 U.S.C. § 2516 to authorize such an application. The statute (Section 2516(1)) provides, "The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge . . . ." John N. Mitchell, who was attorney general at the time the authorization was issued, filed an affidavit that he had personally considered and approved the request from the field representative of the Department of Justice for authorization to apply to a federal judge for the wiretap order which subsequently was issued. The appellants argue that it makes no difference that the Attorney General actually considered

* The Honorable Wendell A. Miles, Judge, United States District Court for the Western District of Michigan, sitting by designation.

and approved the request, since the letter of authorization itself showed on its face that approval had been given by an acting assistant attorney general.

We believe that disposition of this issue is controlled by United States v. Chavez, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974). In that case, the Attorney General had personally authorized the application, but the letter of authorization, the application and order all had erroneously recited approval by an assistant attorney general. The Supreme Court held that in such a situation the misidentification of the person authorizing the wiretap application "does not require suppression of wiretap evidence when the Attorney General himself has actually given the approval . . . ." 416 U.S. at 569, 94 S.Ct. at 1853. In *Chavez*, the Court distinguished United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), where approval of the authorization was given by the executive assistant to the Attorney General. We read *Chavez* to hold that it was the intent of Congress in permitting limited interception of communication to require that authorization to apply for intercept orders proceed from a politically responsible government official who is identifiable. This requirement is satisfied when it is shown that the Attorney General of the United States is the person approving the authorization. The arguments which appellants have made in this case, based on the facts which distinguish it from *Chavez*, were presented to the Fifth Circuit in United States v. Robertson, 504 F.2d 289 (1974), and to the Third Circuit in United States v. Acon, 513 F.2d 513 (1975). Although *Chavez* dealt primarily with suppression under § 2518(10)(a)(i) [but see 416 U.S. at 573-74, 94 S.Ct. 1849] and it is claimed that § 2518(10)(a)(ii) requires a stricter standard we agree with the Third Circuit that (10)(a)(ii) does not require suppression "for every minor facial insufficiency." *Id.* (at 517). See also United States v. Boone, 499 F.2d 551 (4th Cir. 1974), rev'g United States v. Boone, 348 F.Supp. 168

(E.D.Va.1972). Having determined that the authorization in this case was actually approved by the Attorney General, we do not reach the question of the authority of an acting assistant attorney general to give such approval.

We consider next the contention that the court erred in instructing the jury on the effect of accomplice testimony. The specific charge which the court gave is as follows:

> An accomplice is ·one who unites with another person in the commission of a crime, voluntarily and with common intent. An accomplice or co-conspirator does not become incompetent as a witness because of participation in the crime charged. On the contrary, the testimony of an accomplice or co-conspirator alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilty, even though not corroborated or supported by other evidence. However, the jury should keep in mind· that such testimony is always to be received with caution and weighed with great care.

> You should never convict a defendant upon the unsupported testimony of an alleged accomplice or co-conspirator, unless you believe that unsupported testimony beyond a reasonable doubt.

No objection was made to the giving of this instruction, and we are urged to treat it as plain error under Rule 52(b), Fed.R.Crim.P. In the absence of objection to instructions we cannot consider a claim of error unless the instructions are so manifestly prejudicial as to lead to a miscarriage of justice. United States v. Foster, 407 F.2d 1335 (6th Cir.), cert. denied, 396 U.S. 862, 90 S.Ct. 134, 24 L.Ed.2d 114 (1969). Not only did the defendants fail to object to the instructions as given; they requested an instruction on accomplice testimony which is quite similar to that given by the court. The requested charge was—

> While you may convict the. Defendant upon the uncorroborated testimony of an accomplice, nevertheless, before

you should decide to do so, you must review that testimony with caution and find that it is fair and convincing and that it has been proven to your satisfaction that the Defendant is guilty beyond a reasonable doubt.

In view of the language of the requested charge and the failure to object to the charge as given there was no way for the district court to know or pass upon the allegation of error which is now being made.

The basic argument which appellants make concerning the instruction is that the court informed the jury that it could convict on the basis of accomplice testimony, but failed to charge that it could acquit on the basis of such testimony. It is contended that the Supreme Court of the United States dealt with a similar situation in Cool v. United States, 409 U.S. 100, 93 S.Ct. 354, 34 L.Ed.2d 342 (1972), citing the following language, "[T]he instruction was still fundamentally unfair in that it told the jury that it could convict solely on the basis of accomplice testimony without telling it that it could acquit on this basis. Even had there been no other error, the conviction would have to be reversed on the basis of this instruction alone." Id. at 103, n.4, 93 S.Ct. at 357. The accomplice testimony which was considered by the Supreme Court in Cool was quite different from that heard in the present case. There the chief witness for the defense admitted his own guilt, but insisted that the petitioner Cool was not involved in the crime, and the Supreme Court found that his testimony was "completely exculpatory." Id. at 101, 93 S.Ct. 354. In the present case, the accomplices testified on their own behalf and gave self-exculpatory testimony. They were not testifying on behalf of the other defendants, seeking to show their innocence, but were concerned solely with establishing their own innocence. Furthermore, it is apparent from reading the opinions of the Supreme Court and the Court of Appeals for the Seventh Circuit, 461 F.2d 521 (1972), that there was an objection to the instructions in Cool and that

the Court did not consider the allegation of error in the instructions under the plain error rule. The instruction which the district court gave in the present case was sufficient in view of the nature of the accomplice testimony.

■ The third claim of error relates to the admission into evidence of a conversation between two co-defendants, Vigi and Alberts, in which Vigi reported what another co-defendant Pappas had told him concerning activities of the appellant Erdman as reported to Pappas by a third person. The conversation was as follows:

"Alberts: Yes, well like I said I think she's (reference to defendant Erdmann) still booking, you know, look . . .

Vigi: Well she is

Alberts: For herself

Vigi: Definitely booking

Alberts: You know

Vigi: You know why, you know why, uh, I think where this all comes about. *I think it was a couple days ago when Bob (reference to defendant Robert Pappas) was pickin [sic] up from this other joint, I had to meet him on something and uh, you know he was telling me where this guy's getting a line from Betty.* (emphasis supplied)

Alberts: Uh huh

Vigi: Yea, you understand what I'm saying?

Alberts: Yes.

Vigi: And I turned around and said to him, uh, what guy? Some guy in some bar out on the east side and I say uh, you mean to tell me she's giving him a line?

Alberts: Yea

Vigi: He says yea, that's what I hear, I say are you kiddin [sic] me . . . Bob thought she was still coming in with us."

It is claimed that the conversation contained "multiple hearsay" which involved an unknown man telling Bob something,

which he relayed to Vigi, and which Vigi told to Alberts. The fact of Erdman's participation in the conspiracy had already been established and the evidence which is objected to merely dealt with a possibility that Erdman was also running an independent bookmaking operation. Since the jury acquitted Erdman of the substantive charges of conducting illegal gambling operations and her membership in the conspiracy for which she was convicted was established by other competent evidence we fail to see how she was prejudiced by the admission of evidence which dealt only with substantive offenses. The government maintains that the evidence was offered simply as further proof of Erdman's membership in the conspiracy and that it was not offered to establish the truth of the report which "Bob" made to Vigi. Under these circumstances, it would be admissible as an exception to the hearsay rule since the conversation between two co-conspirators, Alberts and Vigi, established Erdman's connection with the conspiracy.

 The final issue which we consider on appeal was stated in the brief of appellants as follows:

> [Did t]he convictions of [defendant-]appellants for conspiracy to violate 18 U.S.C. § 1955 represent a duplication of their convictions for violating 18 U.S.C. § 1955[?]

In order for a conviction to be obtained under 18 U.S.C. § 1955 it must be shown that five or more persons were engaged in conducting an illegal gambling enterprise. The prosecution must show that two or more persons have agreed or conspired to operate an illegal gambling enterprise involving at least five persons to obtain a conviction under § 371 of conspiracy to violate § 1955. It is claimed that conviction on both counts violates "Wharton's Rule," which has been stated as follows:

> When to the idea of an offense plurality of agents is logically necessary, conspiracy, which assumes the voluntary accession of a person to a crime of such a character that it is aggravat-

ed by a plurality of agents, cannot be maintained. 2F. Wharton, Criminal Law § 1604, at 1862 (12th ed. 1932).

The Rule has been more directly stated in a later edition of the treatise as follows:

> An agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission.

> 1 Anderson, Wharton's Criminal Law and Procedure § 89, at 191 (1957).

This issue has been determined adversely to the position of appellants in Ianelli v. United States, —— U.S. ——, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). The opinion of the Supreme Court discusses the history of Wharton's Rule and the finding of a congressional intent that it not apply to prosecutions for violation of § 1955.

The judgment of the district court is affirmed.