UNITED STATES of America, Appellee,

v.

**John E. VOGT, Appellant.**

No. 84–1605.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1984.

Decided April 23, 1985.

Rehearing Denied May 31, 1985.

Daniel P. Reardon, Jr., St. Louis, Mo., for appellant.

Pamela H. Bucy, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before BRIGHT, McMILLIAN, and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

John Vogt has been tried in the District Court and convicted by a jury on all counts of an eleven-count indictment. Counts one through ten charged Vogt with knowingly using a wire communication facility for the interstate transfer of betting or wagering information in violation of 18 U.S.C. § 1084(a). Count eleven charged Vogt with failing to report taxable income to the Internal Revenue Service in violation of 26 U.S.C. § 7203. Vogt received consecutive sentences of two years imprisonment on count one and one year imprisonment on count eleven. Imposition of sentence on the remaining counts was suspended. A three-year probationary period was ordered to commence upon completion of the sentence of imprisonment and Vogt was ordered to pay a $1,000 fine during the first two years of probation. We affirm the judgment of the District Court.[1]

In the fall of 1978, the FBI began intensive examination of a gambling operation in the St. Louis area. Initially, the investigation involved contact with confidential informants, physical surveillance, and the use of court-authorized pen registers.[2] Eventually, the government made application to the United States Attorney General for authorization to apply to the District Court for an order permitting electronic surveillance. Such authorization was granted over the telephone by an Assistant Attorney General on November 17, 1979. On the same day, the government requested and the District Court granted an order approving the installation of wiretapping equipment on four telephones. One of the telephones belonged to Vogt.

The wiretapping of these four phones lasted for a total of sixteen days, beginning November 18, 1979 and ending December 2, 1979. During that time, approximately 250 hours of conversation were taped. Over twenty individuals, including Vogt, consequently were determined by the FBI to be involved in an unlawful gambling operation.

The issues raised by Vogt on appeal are (1) that the government wiretapped his phone without proper authorization; (2) that his Fourth Amendment rights were violated by the government's use of pen registers; and (3) that he was denied due process of law by a preindictment delay of approximately four years.

I.

Vogt's first claim is that the government failed to obtain adequate authorization be-

---

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

2. A pen register is a mechanical device that records the numbers dialed on a telephone by monitoring the electrical impulse caused when the telephone is used. It does not record oral communication or allow it to be overheard.

fore beginning the wiretap of his telephone on November 18, 1979. Specifically, he argues that authorization from the Attorney General must be in writing, and that this written authorization must be submitted to the District Court prior to commencement of the wiretap. The government contends that the telephonic authorization of November 17, 1979 was sufficient to permit its agents to seek the District Court's order permitting the wiretap.

Under 18 U.S.C. § 2516, "[t]he Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge ... for, and such judge may grant in conformity with [18 U.S.C. § 2518] an order authorizing or approving the interception of wire or oral communications ...." *Id.* We note that § 2516 does not explicitly require written authorization for an application to a federal judge.

The purpose of § 2516 is to ensure a responsible determination by the Department of Justice that a wiretap should be authorized. *See United States v. Giordano*, 416 U.S. 505, 515–16, 94 S.Ct. 1820, 1826–27, 40 L.Ed.2d 341 (1974); *United States v. Turner*, 528 F.2d 143, 151 (9th Cir.1975) (once a proper authorizing official is identified the method by which he gave the authorization is not subject to review), *cert. denied,* 423 U.S. 996, 96 S.Ct. 426, 46 L.Ed.2d 371 (1975); 429 U.S. 837, 97 S.Ct. 105, 50 L.Ed.2d 103 (1976). In *United States v. Cale*, 508 F.Supp. 1038 (S.D.N.Y. 1981), the government presented an application to the district court for wiretap surveillance, stating therein that an Assistant Attorney General had provided telephonic authorization for the application. The court held that § 2516 does not require that the authorization be in comtemporaneous writing, and approved the application. We believe that the reasoning of the court in *United States v. Cale* is correct, and that the purpose of § 2516 clearly can be effectuated by telephonic authorization. We therefore hold that telephonic authorization is adequate.

## II.

Vogt next claims that his Fourth Amendment rights were violated because the government failed to establish probable cause before obtaining the pen register interceptions. Vogt acknowledges the holding in *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), that pen register interception does not constitute a search for Fourth Amendment purposes. But Vogt argues that *Smith v. Maryland* is not controlling because some of the challenged pen register interceptions occurred prior to June 20, 1979, when that case was decided by the Supreme Court. As to the pre-June 20, 1979 interceptions, Vogt relies on *United States v. John*, 508 F.2d 1134 (8th Cir.), *cert. denied,* 421 U.S. 962, 95 S.Ct. 1948, 44 L.Ed.2d 448 (1975), a case in which he contends this Court held that a showing of probable cause was required for the installation of a pen register.

Vogt misconstrues the holding of *United States v. John*. The Court did not hold that the installation of a pen register had to be preceded by a showing of probable cause. The Court merely held that because the orders which authorized installation of the particular pen registers in question did satisfy the Fourth Amendment probable cause requirement, it was unnecessary to determine whether the use of a pen register constituted a search. *See id.* at 1141 & n. 10. Had those authorizing orders not satisfied the probable cause requirement, the Court presumably would have had to confront the then undecided question of whether the probable cause requirement applied to the use of a pen register, *i.e.,* whether the use of a pen register constituted a search.

Prior to *Smith v. Maryland* and prior to the use of pen registers in this case, the Supreme Court had indicated that pen register surveillance might not be subject to the requirements of the Fourth Amendment. *See United States v. New York Telephone Company*, 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977). Significantly, the Court distinguished pen registers from listening devices for the reason

that pen registers do not record the contents of communications:

> Indeed, a law enforcement official could not even determine from the use of a pen register whether a communication existed. These devices do not hear sound. They disclose only the telephone numbers that have been dialed.... Neither the purport of any communication between the caller and the recipient of the call, their identities, nor whether the call was even completed is disclosed by pen registers.

*Id.* at 167, 98 S.Ct. at 369.

 We find the Court's analysis in *United States v. New York Telephone Company* to be persuasive and accordingly we hold that the use of pen registers in this case was not improper. Of course, had there been no pen register interceptions in this case prior to June 20, 1979, *Smith v. Maryland* would have mandated the same conclusion.

### III.

Finally, Vogt claims that he was denied due process of law in violation of the Fifth Amendment by a preindictment delay of approximately four years; the government ordered a search of Vogt's house on December 2, 1979, but the indictment was not returned until September 29, 1983. The government attributes this delay to the complexity of the investigation and makes generalized assertions that the delay was reasonably necessary in order to complete laboratory analyses, to catalog and copy taped telephone conversations, to prepare and proof logs of the conversations, and to conduct negotiations with the defendants. A pretrial hearing was held on this issue. The presiding magistrate, although "concerned" about the delay, found that the delay was not unreasonable and the District Court adopted this finding. We need not address the reasonableness of the delay because we agree with another finding of the magistrate on this issue which also was adopted by the District Court—that Vogt failed to demonstrate prejudice as a result of the delay.

 "An indictment may be dismissed for preindictment delay if it appears that the delay was unreasonable and that it was prejudicial to the defendant in the presentation of his case." *United States v. Wells,* 702 F.2d 141, 143 (8th Cir.1983). Vogt does not claim that he was prejudiced in the presentation of his case; he only claims, in a rather vague fashion, that it is a difficult burden to be the object of a lengthy federal investigation. Thus Vogt has not made the requisite showing of prejudice for dismissal of the indictment in this case due to preindictment delay.

The judgment of the District Court is affirmed.