**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Eric J. MOORE; Craig C. Robinson; Ray L. Williams; Keith L. Cooks; Lashonda R. Robinson; Sherice Y. Thompson, Defendants–Appellees.**

**No. 94–1061.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 9, 1994.

Decided Nov. 28, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 19, 1995.

Thomas J. Monaghan, Asst. U.S. Atty., Omaha, NE, (Sara E. Fullerton and Daniel A. Morris, Asst. U.S. Attys., on the brief), for appellant.

James R. Mowbray, Lincoln, NE, argued, for appellees.

Before LOKEN, Circuit Judge, BRIGHT, Senior Circuit Judge, and HANSEN, Circuit Judge.

LOKEN, Circuit Judge.

The government appeals a district court order granting motions to suppress in a narcotics conspiracy prosecution. The suppressed evidence was obtained by electronic interception undertaken after a state court judge had filed an unsigned wiretap approval order. The issue is whether the evidence must be suppressed under 18 U.S.C. § 2518(10)(a)(ii) because the unsigned order is "insufficient on its face." We conclude that suppression is not warranted and therefore reverse.

## I.

On February 18, 1993, Lancaster County, Nebraska, law enforcement officials informally delivered a 210–page application and supporting affidavit to Lancaster County District Judge Jeffre Cheuvront. The application sought an ex parte order permitting installation of a wiretap on the telephone located at E & J Auto, the business of Eric J. Moore and Craig C. Robinson. The next day, after Judge Cheuvront had studied the application and affidavit, officer William Snoad of the Lincoln Police Department, County Attorney Gary Lacey, and Assistant United States Attorney Sara Fullerton returned to Judge Cheuvront's chambers to formally apply for the wiretap order pursuant to Neb.Rev.Stat. § 86–705.

After a brief conversation with Judge Cheuvront, Snoad signed the original affidavit, Lacey signed the original application, and they handed the original set of papers to Judge Cheuvront, who signed portions of them that the other three could not see. The law enforcement officers asked for copies of the signature pages, and Judge Cheuvront arranged for photocopying. Officer Snoad did not look at the copies he received and put in his file. A few minutes later, at 9:00 a.m. on February 19, the original papers as signed in chambers were filed with the clerk of court. Lincoln police then instructed the local phone company to "flip the audio switch" on a previously installed pen register, and calls to and from that telephone number began to be intercepted and recorded.

Because wiretap orders are limited by statute to a maximum of thirty days, Lacey and Fullerton submitted an application for an extension order in mid-March. On March 19, Judge Cheuvront signed and filed an extension order which provided, "said authorization shall continue day and night for a period of thirty (30) days from the end of the 30–day period *of prior authorization.*" (Emphasis added.) On March 26, Fullerton applied for permission to disclose the wiretap evidence for law enforcement purposes. Judge Cheuvront signed and filed an order permitting disclosure of "any information concerning wire communications, or evidence derived therefrom, intercepted over tele-phone number (402)477–2733, *pursuant to the order of this Court, dated February 19, 1993,* and March 19, 1993." (Emphasis added.)

Information obtained through this wiretap led to the seizure of two shipments of cocaine base and to other evidence of drug trafficking. A grand jury then indicted appellees Moore, Robinson, Ray L. Williams, Keith L. Cooks, Lashonda R. Robinson, and Sherice Y. Thompson for conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. Following disclosure of the wiretap application and order, as required by 18 U.S.C. § 2518(9), defense counsel learned that Judge Cheuvront had signed the original February 19 application and supporting affidavit as attesting witness, but had not signed the filed February 19 wiretap order. When the government could not produce a signed copy of that order, defendants moved to suppress all evidence obtained from the wiretap, relying on 18 U.S.C. § 2518(10)(a), which provides:

Any aggrieved person in any trial, hearing, or proceeding in or before any court ... may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that—

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization or approval.

Such motion shall be made before the trial.... If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter.

The record on this motion includes Judge Cheuvront's deposition testimony and Officer Snoad's testimony at an evidentiary hearing held before a magistrate judge. Judge Cheuvront testified that he found sufficient probable cause to issue the February 19 order, that he intended to sign the order and be-

lieved he had signed it, but that the filed copy was unsigned:

I thought I signed the order. To this day I thought I signed the order, but I would have to say that there is certainly substantial evidence that I did not. Is my face red?

Judge Cheuvront also testified that he signed the March 19 extension order based in part on the probable cause contained in Snoad's February 19 affidavit.

Officer Snoad testified that he saw Judge Cheuvront sign portions of the original papers on February 19 but could not see what the judge signed. He did not look at his copies of the signature pages before putting them in his file. He knew that the original papers were then filed with the clerk of court, and he proceeded to execute what he believed to be a properly entered wiretap order. Snoad explained:

Q. Now, with respect to this wiretap order, was there anyone that you had to serve this on once you left Judge Cheuvront's chambers?

A. No.

Q. So when you took the signature pages with you, were you simply taking those back to put into your files?

A. Yes.

Q. And normally in the search warrant context, you would have to actually take the order and serve it on somebody, is that right?

A. Yes.

Q. But in this case, had arrangements been made with the phone company to simply notify them when that had been signed?

A. Yes.

Q. Prior to the time in June when I notified you that the order in the district court files was not signed from February 19th, did you have any reason to believe that that order had not been signed?

A. No.

Q. Did you have any reason to believe that Judge Cheuvront had not authorized the wiretap?

A. No.

Q. And were you operating, in executing that order, under the belief that Judge Cheuvront had in fact signed and authorized that wiretap?

A. Yes.

Based upon the foregoing evidence, the magistrate judge recommended that the motions to suppress be denied. The magistrate judge concluded that the federal wiretap statute governs[1] and found (i) that the wiretap application met the requirements of the federal statute; (ii) that on February 19 Judge Cheuvront made the necessary statutory findings to approve a wiretap; and (iii) that the Judge authorized the wiretap but "failed to manifest that authorization by signing the order." The magistrate recommended that the motions be denied on the ground that the unsigned order was an oversight rather than a substantial statutory violation requiring suppression under the Supreme Court's interpretations of § 2518(10)(a) in *United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), *United States v. Chavez*, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974), and *United States v. Donovan*, 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977).

Rejecting the magistrate judge's recommendation, the district court granted the mo-

1. In general, the admissibility of wiretap evidence in federal criminal prosecutions is a question of federal law. *See United States v. Olderbak*, 961 F.2d 756, 760 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 422, 121 L.Ed.2d 344 (1992); *United States v. Van Horn*, 579 F.Supp. 804, 810 (D.Neb.1984), *aff'd sub nom. United States v. Womochil*, 778 F.2d 1311 (8th Cir.1985). However, a wiretap order issued by a state court must comply with state as well as federal law. *See* 18 U.S.C. § 2516(2). When determining whether a state court wiretap order is "insufficient on its face" under § 2518(10)(a)(ii), it is logical to as-

sess the order's sufficiency by comparing it with the form of order typically issued by that court, rather than the form of order issued by the local federal district court. However, that intriguing choice-of-law issue is not before us. The Nebraska and federal wiretap statutes are identical, *see State v. Hinton*, 226 Neb. 787, 415 N.W.2d 138, 144 (1987), and the record confirms that the absence of a judge's signature on the February 19 order is equally significant under state and federal practice in Nebraska (note Judge Cheuvront's reference to his "red face").

tions to suppress, concluding that "[t]here is no better example of a wiretap order which is 'insufficient on its face' within the meaning of 18 U.S.C. § 2518(10)(a)(ii) than an order which has not been signed by a judge." The government appeals this interlocutory order, as it may under 18 U.S.C. § 3731. The only issue on appeal is whether the district court properly construed § 2518(10)(a)(ii) as requiring suppression.

## II.

The federal wiretap statute was first enacted as Title III of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. 90–351, 82 Stat. 212–223, codified at 18 U.S.C. §§ 2510–2520. The law has dual purposes, "(1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized." S.Rep.No. 1097, 90th Cong., 2d Sess., *reprinted in* 1968–2 U.S.C.C.A.N. 2112, 2153. Congress followed the constitutional standards of *Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), and *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), in drafting Title III. *Id.* at 2163.

The statute broadly prohibits wiretaps "[e]xcept as otherwise specifically provided in this chapter." § 2511(1). It mandates detailed procedures that law enforcement officials must follow in applying for a wiretap order, *see* §§ 2516, 2518(1), and specific findings that a judge must make in issuing a wiretap order, *see* § 2518(3). It also specifies in detail the substantive provisions of the wiretap approval order, *see* § 2518(4), and it limits the duration of the order and any extension order, *see* § 2518(5). Finally, the statute prohibits the use of wiretap evidence in any trial "if the disclosure of that information would be in violation of this chapter." § 2515. Section 2518(10)(a) defines the disclosures prohibited by § 2515 and the standards for suppressing wiretap evidence. *See Giordano,* 416 U.S. at 524, 94 S.Ct. at 1831. This case turns on whether suppression is required under § 2518(10)(a)(ii) because the February 19 wiretap order was "insufficient on its face."

### A.

 *Giordano, Chavez,* and *Donovan* involved the question whether wiretap evidence was "unlawfully intercepted" for purposes of § 2518(10)(a)(i). At issue in *Giordano* was a wiretap application not authorized by a proper Department of Justice official. At issue in *Chavez* was a wiretap application that misidentified the authorizing Department of Justice official. At issue in *Donovan* was a wiretap application that failed to name all the persons whose communications would be intercepted. The Court concluded that suppression is required under § 2518(10)(a)(i) only for "failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *Giordano,* 416 U.S. at 527, 94 S.Ct. at 1832. In other words, in determining whether suppression is warranted, courts must examine whether the violated statutory requirement occupies "a central, or even functional, role in guarding against unwarranted use of wiretapping or electronic surveillance." *Chavez,* 416 U.S. at 578, 94 S.Ct. at 1857, quoted in *Donovan,* 429 U.S. at 437, 97 S.Ct. at 673.

Relying on this aspect of the *Giordano, Chavez,* and *Donovan* decisions, every circuit to consider the question has held that § 2518(10)(a)(ii) does not require suppression if the facial insufficiency of the wiretap order is no more than a technical defect. *See United States v. Traitz,* 871 F.2d 368, 379 (3d Cir.), *cert. denied,* 493 U.S. 821, 110 S.Ct. 78, 107 L.Ed.2d 44 (1989); *United States v. Swann,* 526 F.2d 147, 149 (9th Cir.1975) (denying suppression for a "minor facial insufficiency"); *United States v. Joseph,* 519 F.2d 1068, 1070 (5th Cir.1975), *cert. denied,* 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 312 (1976) ("this particular defect did not make an order facially insufficient"); *United States v. Vigi,* 515 F.2d 290, 293 (6th Cir.), *cert. denied,* 423 U.S. 912, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975) (denying suppression for

"minor facial insufficiency"); *United States v. Acon*, 513 F.2d 513, 517–19 (3d Cir.1975) (same). *See also* a pre-*Giordano* decision, *United States v. Cirillo*, 499 F.2d 872, 880 (2d Cir.), *cert. denied*, 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974) (denying suppression because "omission of a minimization directive was a 'technical defect'").

In *Traitz*, the Third Circuit considered a wiretap order that failed to identify the investigating agency and the Department of Justice official who authorized the application. Applying a "two-tiered analysis," the court first determined that the order was facially defective. It then affirmed the denial of a suppression motion because "these omissions are properly viewed as technical defects not warranting suppression." 871 F.2d at 379. We agree with the Third Circuit's two-tiered approach. The district court erred in looking only at whether the February 19 wiretap order was "insufficient on its face."

### B.

Although many court orders are oral, and some written orders may be intentionally unsigned, Judge Cheuvront testified that he intended to sign the February 19 order, and Officer Snoad testified that he would not have executed the order had he known it was unsigned. Thus, we accept the district court's conclusion that the order is "insufficient on its face" and turn to the second part of the *Traitz* two-tiered analysis, whether that defect requires suppression of the resulting wiretap evidence.[2]

■ The requirement of judicial approval is obviously at the core of the congressional purposes underlying this statute. In addition, although § 2518(3) only says that the judge "may enter" an order, the requirement that judicial approval be expressed in a de-tailed order, § 2518(4), necessarily requires that the order be in writing. However, § 2518(4) does not mandate a signed order. Perhaps that is because Congress assumed that any written judicial order would be signed. But more likely it reflects congressional deference to the judiciary to decide how an order may be "entered," and perhaps it also reflects recognition that modern technology offers ways to replace the personal signature. *See United States v. Turner*, 558 F.2d 46 (2d Cir.1977) (upholding search warrant issued by telephone).

Because the statute does not expressly require a signed order, our inquiry must focus on whether the absence of Judge Cheuvront's signature in this case violated a core statutory requirement, or was a mere technical defect. The record reveals compliance with all the fundamental statutory safeguards that protect against unauthorized or unwarranted wiretap surveillance. The application was authorized by the Nebraska Attorney General, as required by § 2516(2). The two-hundred-page application met the requirements of § 2518(1). Judge Cheuvront made the findings required by § 2518(3) before deciding to approve the application. The unsigned order, which Judge Cheuvront intended to sign, contained each of the specific provisions mandated by § 2518(4), and complied with the thirty-day time limit of § 2518(5). In short, unlike the situation in *Donovan*, the absence of Judge Cheuvront's signature on the February 19 order does not reflect a violation of *any* underlying statutory requirement. On the facts of this case, the unsigned order was a technical defect, like the missing page three in the wiretap order in *Traitz*. *See* 871 F.2d at 376–78; *see also United States v. Vogt*, 760 F.2d 206, 208 (8th Cir.1985) (approving telephonic authorization to apply for a wiretap).

---

**2.** By focusing on legislative intent, one could approach this issue differently. The inquiry into facial insufficiency necessarily requires a perspective. If the relevant perspective is that of a third party, such as the district court or this court looking at the February 19 order long after the events in question, then the unsigned order seems critically defective, at least to one trained in the law. But if we focus instead on the parties to these events, then the facial insufficiency is far less obvious. Officer Snoad saw Judge Cheu-vront sign portions of the wiretap application papers, knew that the order was being filed, and came away from the judge's chambers convinced that the wiretap was judicially approved. Judge Cheuvront intended to authorize the wiretap, and his subsequent actions in issuing the March 19 and March 26 orders confirm that he thought his February 19 order was effective. Thus, from the standpoint of Congress's purpose in requiring judicial approval of wiretaps, the filed order was arguably not "insufficient on its face."

We disagree with the unsupported assertion in *United States v. Ceraso*, 355 F.Supp. 126, 128 (M.D.Pa.1973), that, regardless of the underlying facts, an unsigned order can never be effective.

Noting minor inconsistencies in the recollections of Judge Cheuvront and Officer Snoad, the district court concluded that a per se rule of facial insufficiency was necessary to avoid the need to determine what another judge intended. We disagree. It does not require particularly difficult or sensitive fact-finding to determine (i) whether Judge Cheuvront intended to "enter" the February 19 order, as § 2518(3) requires, and (ii) whether Officer Snoad believed he was acting under judicial authorization when he thereafter directed installation of the wiretap. *See United States v. Smith*, 726 F.2d 852, 859 (1st Cir.) (en banc), *cert. denied*, 469 U.S. 841, 105 S.Ct. 143, 83 L.Ed.2d 82 (1984) (stating in a wiretap case that "absence of a compelling signature on a critical document can be remedied by proof of actual authority"). Moreover, in this case, there is no disquieting issue of judicial credibility to be resolved. On March 19 and March 26, 1993, long before the defect in the February 19 order was discovered, Judge Cheuvront signed and filed written orders reciting that the February 19 unsigned order was a "prior authorization" and an "order of this Court."

For the foregoing reasons, we reject the district court's conclusion that this suppression issue should be resolved on the basis of form, not substance. To the extent that the unsigned February 19 order is "insufficient on its face," the insufficiency is a technical defect not requiring suppression under § 2518(10)(a) as construed by the Supreme Court.

## C.

 The Government also argues that the motion to suppress should be denied under the good faith doctrine adopted in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *Leon* of course dealt with the judicially developed exclusionary rule for Fourth Amendment violations, whereas we deal here with a statutory exclusionary rule imposed for a "violation of this chapter." However, § 2518(10)(a) is worded to make the suppression decision discretionary ("If the motion is granted"), and its legislative history expresses a clear intent to adopt suppression principles developed in Fourth Amendment cases. *See* S.Rep. No. 1097, 1968–2 U.S.C.C.A.N. at 2185. Therefore, we conclude that the subsequently-developed *Leon* principle applies to § 2518(10)(a) suppression issues.

Appellees argue that the *Leon* good faith principle does not apply to facially invalid warrants or wiretap orders. In *Leon*, the Supreme Court stated that, "depending on the circumstances of the particular case, a warrant may be so facially deficient ... that the executing officers cannot reasonably presume it to be valid." 468 U.S. at 923, 104 S.Ct. at 3421. That is not a categorical pronouncement that one cannot rely in good faith on a facially defective warrant. Indeed, following this statement, the Court cited its companion decision in *Massachusetts v. Sheppard*, 468 U.S. 981, 988–91, 104 S.Ct. 3424, 3427–29, 82 L.Ed.2d 737 (1984), in which it held that evidence should not be excluded because a police officer had reasonably relied on a judge's erroneous assurance that he had corrected a defect in the warrant.

The district court rejected the government's good faith argument because Officer Snoad "could not in good faith have relied upon an order that was not signed inasmuch as the order is 'insufficient on its face.'" But that is simply another way of saying that *Leon* cannot apply to a facially invalid warrant, contrary to *Leon* and *Sheppard*. Here, it is undisputed that Officer Snoad left Judge Cheuvront's chambers on February 19 believing that the Judge had approved the wiretap application and that the proposed wiretap order had been "entered," that is, signed by the Judge and filed with the clerk of court. He had no need to look at the wiretap order thereafter. Thus, as in *Sheppard*, "the police conduct in this case clearly was objectively reasonable and largely error-free.... [I]t was the judge, not the police officers, who made the critical mistake." 468 U.S. at 990, 104 S.Ct. at 3429. Because the law enforcement officials acted reasonably and complied with the core statutory require-

ments of federal wiretap law in applying for and executing the wiretap orders, *Leon* requires that suppression be denied.

For the foregoing reasons, the judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

BRIGHT, Senior Circuit Judge, concurring.

I concur in everything except part II.C. of the court's opinion.