# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1549

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | Appeal from the United |
| | * | States District Court for |
| v. | * | the District of Nebraska. |
| | * | |
| Carlos Lomeli; Manuel Hernandez, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: November 16, 2011
Filed: April 18, 2012

_____

Before RILEY, Chief Judge, BEAM and BYE, Circuit Judges.

_____

BEAM, Circuit Judge.

Appellant, the United States Government, appeals from the district court's[1] order adopting the findings and supplemental findings and recommendations of the magistrate judge[2] granting Carlos Lomeli's and Manuel Hernandez's motions to suppress evidence obtained as a result of a wiretap. The government claims that the

_____

[1]The Honorable Lyle E. Strom, United States District Court for the District of Nebraska.

[2]The Honorable F.A. Gossett, III, United States Magistrate Judge for the District of Nebraska.

district court erred in holding that the government's objections to the magistrate judge's initial findings and recommendation were moot, and by refusing to consider the merits of its arguments against suppression of the authorized wiretap. We affirm.

## I.    BACKGROUND

In October 2009, in furtherance of an ongoing narcotics investigation, an Assistant United States Attorney (AUSA) for the District of Nebraska submitted an application for interception of wire communications to a federal judge who approved the requested wiretap. Applications for an order authorizing or approving the interception of wire or oral communications ("wiretap applications") are governed by federal law. Under the law, wiretap applications may only be authorized by a discrete number of people specially designated by the Attorney General, who are enumerated in the federal statute. 18 U.S.C. § 2516(1). Additionally, all wiretap applications must identify the investigative or law enforcement officers making the application, and indicate the Department of Justice (DOJ) officer authorizing the application. 18 U.S.C. § 2518(1)(a).

The application at issue here generally complied with all requirements, except that even though the application indicated that "[a]ttached to this Application are copies of the Attorney General's order of Special Designation and the Memorandum of Authorization approving this Application," none were attached. The entire paragraph in the application that is at issue today reads:

> Pursuant to Section 2516 of Title 18, United States Code, the Attorney General of the United States has specially designated the appropriate officials of the Criminal Division to exercise the power conferred on the Attorney General by Section 2516 of Title 18, United States Code, to authorize this Application, under the power designated to him by special designation of the Attorney General pursuant to Order number 3055-2009 of February 26, 2009, and an appropriate official of the Criminal

Division, has authorized this Application. Attached to this Application are copies of the Attorney General's order of Special Designation and the Memorandum of Authorization approving this Application.

Defendants Carlos Lomeli and Manuel Hernandez filed motions to suppress following their arrests founded upon evidence obtained during the authorized wiretaps. The motions, in part, claimed that the wiretap application failed to comply with federal law. On December 9, 2010, the magistrate judge filed a report and recommendation. As relevant here, the magistrate judge recommended that the motions to suppress be granted as to all evidence obtained as a result of the wiretap. The magistrate judge concluded that the government's failure to include the authorizing forms was not a mere technical defect and thus the wiretap application was insufficient on its face.

Over Lomeli's and Hernandez's objection, the magistrate judge reopened this matter and conducted a supplemental hearing on January 5, 2011. During the hearing, the government entered into evidence the two missing documents from the wiretap application, showing that the people signing off on the wiretap had the authority to do so. On January 17, 2011, following the supplemental hearing, the magistrate judge filed its supplemental findings and recommendation. In it, the magistrate judge acknowledged that both parties' objections to the initial report and recommendation were pending before the district judge and no final judgment had been entered. The magistrate judge also highlighted the fact that to-date the government had never made any attempt to produce the authorization documents that were to be attached to the wiretap application, did not provide the missing attachments to Lomeli and Hernandez during discovery, and "apparently made no effort to locate the missing documents prior to the suppression hearing." Rather than denying the rehearing on this basis outright, the magistrate judge reopened the matter "only to the extent necessary to provide Judge Strom with a complete record."

The magistrate judge then, however, discussed the substantive issue as to whether the omission of the attached documents was merely a technical defect. The magistrate judge held a second time that the government's failure to attach the referenced authorization documents was not merely a technical defect and was fatal to its claim. The magistrate judge pointed out the paucity[3] of record evidence that the identity of the officer who authorized the application was somehow actually or timely disclosed to the issuing judge despite the omission of that information from the application. Thus, the magistrate judge held that contrary to Sixth Circuit precedent relied upon by the government in support of its argument that not every noncompliance with the relevant wiretap application statutes mandates suppression, see United States v. Gray, 521 F.3d 514, 524 (6th Cir. 2008), the nature of the defect here was not technical nor surmountable for similar reasons. Accordingly, the magistrate judge once again granted defendants' motions to suppress.

The district court issued its order on February 8, 2011. As relevant here, the court acknowledged that the government filed objections to the magistrate judge's initial findings and recommendation but overruled the objections "as moot inasmuch as the magistrate judge reopened the record." The court noted that no objections were filed to the supplemental findings and recommendation and they were thus "approved and adopted." It then ruled that "[d]efendant Lomeli's motion to suppress is granted in part; the motion to [suppress] evidence obtained as the result of the October 22, 2009, Nebraska Wiretap is suppressed," and likewise that "Hernandez' motion to suppress is granted; the motion to suppress evidence obtained as the result of the October 22, 2009, Nebraska Wiretap is suppressed." The government appeals.

---

[3]"Paucity" may be a misnomer here, as the record is wholly devoid of any such evidence.

-4-

## II.  DISCUSSION

### A.  Standard of Review

This court reviews suppression issues under a two-pronged standard of review, reviewing the district court's factual findings for clear error and its legal conclusions de novo.  United States v. Sheikh, 367 F.3d 756, 762 (8th Cir. 2004).

### B.  Procedural Issue

On appeal, the government argues that the district court failed to conduct a de novo review when it adopted the magistrate judge's supplemental findings and recommendation.  It claims the court thus failed to address the government's pending objections regarding the magistrate judge's recommendation suppressing the wiretap evidence.

In the end, no matter what this court determines regarding whether the government was required to renew its initial objection or file objections anew following the issuance of a magistrate judge's supplemental findings and recommendation, or what standard of review the district court employed, any ruling on this discrete procedural matter does not effect our de novo review of the legal conclusions that are central to the instant analysis.  See United States v. Barragan, 379 F.3d 524, 528 (8th Cir. 2004) ("We review *de novo* the district court's legal conclusions.").

> The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will *not* result in a [wholesale] waiver of the right to appeal "when the questions involved are questions of law or mixed questions of law and fact, or when neither the local court rule nor the magistrate's notice has clearly informed the [parties] that failure to

object to the magistrate's report will result in a waiver of the right to appeal."

United States v. Benshop, 138 F.3d 1229, 1234 (8th Cir. 1998) (first and third alteration in original) (quoting Francis v. Bowen, 804 F.2d 103, 104 (8th Cir. 1986) (per curiam) (internal quotation omitted)).

## C.    Substantive Issue Regarding Wiretap Application Evidence

"The federal wiretap statute was first enacted as Title III of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. 90-351, 82 Stat. 212-223, codified at 18 U.S.C. §§ 2510-2520." United States v. Moore, 41 F.3d 370, 374 (8th Cir. 1994). "The law has dual purposes, '(1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized.'" Id. (quoting S. Rep. No. 1097, 90th Cong., 2d Sess., reprinted in 1968-2 U.S.C.C.A.N. 2112, 2153).  The statute broadly prohibits wiretaps "[e]xcept as otherwise specifically provided in this chapter."  18 U.S.C. § 2511(1).

The federal statutes governing wiretap applications clearly require that such applications must be authorized by the Attorney General or other such designated authority specifically enumerated in the statute.  Id.  at § 2516(1).  All wiretap applications must identify the investigative or law enforcement officer making the application, and the designated Attorney General representative authorizing the application.  Id. at § 2518(1)(a).  According to the statutory scheme, the court may suppress evidence acquired through wiretapping, upon motion of "[a]ny aggrieved person" if "(i) the communication was unlawfully intercepted; (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval."  Id. at § 2518(10)(a).  Noncompliance with the statutory provisions

governing the application procedure are contemplated by the relief available for aggrieved persons under the statute. United States v. Giordano, 416 U.S. 505, 528 (1974) (explaining that § 2518(10)(a)(i) provides for suppression of evidence directly or indirectly obtained in violation of the pre-approval provisions of the chapter and that these provisions were intended to play a central role in the statutory scheme and thus violation thereof amounts to the unlawful interception of wire and oral communications).

Determining whether suppression is warranted in a particular case requires an examination as to whether the statutory requirement violated (here, the failure to identify the applicant's authority to make the application) occupies a central, or even functional, role in guarding against unwarranted use of wiretapping or electronic surveillance. United States v. Chavez, 416 U.S. 562, 578 (1974). Suppression is required under § 2518(10)(a)(i) & (ii)[4] only for "failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." Giordano, 416 U.S. at 527 (holding, in part, that suppression under § 2518(10)(a)(i) for "unlawfully intercepted" communications includes constitutional violations as well as failure to satisfy certain statutory requirements); see also Moore, 41 F.3d at 375 (analyzing whether a facial insufficiency violated a core statutory requirement in a § 2518(10)(a)(ii) case). Suppression is not justified if the facial insufficiency of the wiretap order is no more than a technical defect. Moore, 41 F.3d at 374. According to Moore, our analysis is two-tiered, first identifying the omission or defect at issue (i.e., whether the challenged document is insufficient on its face), and second,

_____

[4]It is unclear from the parties' initial motions and the district court's order which of the grounds available under § 2518(10)(a) was relied upon to suppress the wiretap evidence here.

determining whether that defect violates a core statutory requirement or whether it is a mere technical defect not warranting suppression. Id. at 375.

The government asserts that the boilerplate statement in the wiretap application itself that "an appropriate official of the Criminal Division" had given authorization, fulfilled the statutory purpose–that just by saying someone authorized by the Attorney General had signed off on it, "the issuing judge was made aware that the central role in guarding against the unwarranted use of wiretapping had been fulfilled." So, argues the government, the failure to attach the actual authorizing documents was merely a technical defect. The district court disagreed, holding that omitting these documents could not be a mere technical defect because correct authorization and proof thereof is the center of the whole statutory scheme limiting the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device.

In Giordano, the Supreme Court stated it was "confident that the provision for pre-application approval was intended to play a central role in the statutory scheme and that suppression must follow when it is shown that this statutory requirement has been ignored." 416 U.S. at 528. In Giordano, the Court suppressed evidence when it became apparent that at the time the wiretap applications were made, the application erroneously purported to have been authorized by a specially designated Assistant Attorney General. Id. at 509, 529. Later, however, it developed that the first wiretap application had not in fact been authorized by a specially designated individual, but rather the Attorney General's Executive Assistant, an individual not statutorily authorized to do so. Id. at 510. Because the officer approving the application had been misidentified, the motion to suppress was granted under § 2518(10)(a)(i) as to evidence obtained from the execution of the first wiretap and any wiretap thereafter that relied upon the first faulty application. Id. at 533.

Later, in Chavez, the Court again visited this issue. There, the Court held that suppression was not necessary where the Attorney General had actually authorized the challenged wiretap but the application incorrectly identified the Assistant Attorney General (a potential, statutorily designated official that *could* have been designated by the Attorney General) as the authorizing official. 416 U.S. at 568-69. The Court acknowledged the "facial sufficiency" of the wiretap application because it clearly identified on its face the name of the authorizing Assistant Attorney General. Id. at 573-74. Stated differently, the application in Chavez stated that a specifically named, statutorily designated official actually gave the authorization. In light of Chavez, the government's argument that the statement on the application itself that the appropriate approval had been received carries some weight. The critical difference is, however, that in Chavez, the face of the application included the name of the *specific* individual that had purportedly authorized the application whereas the application in this case just states generically that "an appropriate official of the Criminal Division" had authorized the application. Id. at 566. Unlike Chavez, one cannot tell from the face of the application at issue here exactly *who* the authorizing individual was, just generically that authorization was received, which does not allow the authorizing judge to issue an interception order with the knowledge contemplated by Congress. 18 U.S.C. § 2518(1)(a) (requiring that each application include the identity of the officer authorizing the application).

The Eighth Circuit has likewise weighed in on this matter. In Moore, the defendant challenged a wiretap application that had been approved by the judge, and although the judge thought he signed the application order, there was no signature by the judge on the order. 41 F.3d at 373. There, we denied the motion to suppress, determining that the absence of the judge's signature was only a technical defect. Id. at 375-76. The court held that the requirement of judicial approval is obviously at the core of the congressional purpose underlying the statute, but noted that *written* approval was not actually required. Id. And, there was testimony from the authorizing judge that he indeed approved the application and fully intended to sign

-9-

it. Id. In fact, the judge testified that he found sufficient probable cause to issue the order and believed he had signed the order along with all of the other original papers presented to him for his signature at the time of the application. Id. at 372-73. On those facts, the absence of the judge's signature did "not reflect a violation of *any* underlying statutory requirement." Id. at 375. Moore is thus inapposite to the issue uniquely presented here.

The application in the instant case is insufficient on its face, as it does not comport with the § 2518(1)(a) requirement. And despite the government's arguments to the contrary, the omission here is not "technical" as has been determined in other cases. See United States v. Radcliff, 331 F.3d 1153, 1160-63 (10th Cir. 2003) (denying suppression because even though the name of the authorizing official was omitted from the wiretap *order*, there was no dispute that the *applications* identified the appropriate DOJ individual); United States v. Fudge, 325 F.3d 910, 917-18 (7th Cir. 2003) (denying suppression even though the order granting the wiretap application did not specifically identify the authorizing DOJ official because attached to the application were two letters specifying the approval and authorization, along with an affidavit supporting the same).

By way of this statutory scheme, Congress intended:

not only to limit resort to wiretapping to certain crimes and situations where probable cause is present but also to condition the use of intercept procedures upon the judgment of a senior official in the Department of Justice that the situation is one of those warranting their use. It is reasonable to believe that such a precondition would inevitably foreclose resort to wiretapping in various situations where investigative personnel would otherwise seek intercept authority from the court and the court would very likely authorize its use.

Giordano, 416 U.S. at 527-28.

-10-

The authorizing judge in the instant case had no way of knowing the name of the actual, statutorily designated official that had indeed authorized the application even though the application states as much in general terms–one of the core components of this legislation. And, the government offered no evidence (such as was received in other cases) that the judge indeed knew the identity of the appropriate authorizing official, or that the name of the statutorily designated official was otherwise disclosed. Such evidence would have demonstrated compliance with all the fundamental statutory safeguards that protect against unauthorized or unwarranted wiretap surveillance.[5] See Moore, 41 F.3d at 375 n.2 (justifying a determination that an omission was a mere technicality by focusing on the relevant perspective of the parties to the events, where all present, including the judge, proceeded as if the judge *had* signed the order as he fully intended, thus Congress's purpose in requiring judicial approval was substantially fulfilled).

Despite the fact that the government intended and may very well have thought the appropriate authorizing documents were attached to the application, they were not, and there is nothing in the record to give us reason to believe that the judge authorizing the wiretap–the person for whose benefit the statutory requirement is written–knew that the requisite authority was obtained. It was not until the magistrate judge conducted the supplemental hearing in the instant case that the government offered the supporting documents. Given the congressional intent to strictly limit the use of this electronic interception, failing to include the name of the authorizing official, and failing to include the documents that could have easily established

---

[5]The cases relied upon by the government to support the proposition that minor errors in a wiretap application or order do not warrant suppression are wholly distinguishable. In each, either the issuing judge *knew* the identity of the authorizing DOJ official, or the official was designated by name in the application but that information was omitted from the authorizing order. See United States v. Callum, 410 F.3d 571, 574-77 (9th Cir. 2005), Fudge, 325 F.3d at 914-18; Radcliff, 331 F.3d at 1160-62.

-11-

confirmation or proof of such authorization, was not a "minor," or merely technical, defect.[6] We therefore affirm the district court's suppression order on this basis.

## C.    Good Faith Exception

The government alternatively argues that the Leon good faith exception should apply in these circumstances because, again, the application's statement that "an appropriate official of the Criminal Division" suffices. Yet, even though we have applied the good faith doctrine adopted in United States v. Leon, 468 U.S. 897 (1984) in the § 2518(10)(a) context, it does not apply on these facts. Moore, 41 F.3d at 376. In Leon, the Supreme Court held that the Fourth Amendment exclusionary rule does not require the suppression of evidence seized by the police pursuant to a search warrant which was sought, obtained, and executed in objectively reasonable good faith, but which was held, subsequently, to have been issued without probable cause. 468 U.S. at 918-21.

Moore and its application of the good faith doctrine is notably distinct. In Moore it "'was the judge, not the police officers, who made the critical mistake.'" 41 F.3d at 376 (quoting Massachusetts v. Sheppard, 468 U.S. 981, 990 (1984)). There, the law enforcement officials "complied with the core statutory requirements of federal wiretap law in applying for and executing the wiretap orders." Id. at 376-77. The officer in Moore left the judge's chambers believing, as did the judge, that the

_____

[6]In doing so, we part ways with our sister circuit, which held otherwise on similar facts. See Gray, 521 F.3d at 523, 527 (denying suppression because even though the specific name of the authorizing official was omitted from the application, and it was unclear whether the applicant informed the judge of the specific name of the authorizing official, the fact of proper authorization was made known to the issuing judge at the time he signed the application–i.e., the applicant told the judge he had obtained authorization from a DOJ official specially designated to approve wiretap applications).

judge had approved the wiretap application and that the order had been entered. <u>Id.</u> at 376. Accordingly, we held the officer acted in good faith in presuming the validity of the wiretap order he reasonably believed he watched the judge sign and enter.

Just the opposite occurred here. We have already determined that the government failed to comply with the core statutory requirements of federal wiretap law and that the omission here was not merely a technical defect. Stated in juxtaposition with <u>Leon</u> jurisprudence, we hold that no wiretap applicant can, in good faith, rely upon a court order authorizing the wiretap when the applicant failed to comply with the edicts of the federal wiretap statute in procuring the order. The failure here thwarts the core purpose of the statutory scheme in place to regulate such extraordinary investigative techniques. To hold otherwise on these facts would prompt bad practices and reward those who routinely include mere boilerplate language in wiretap applications, which runs upstream from the carefully laid out statutory scheme. Without including the name of the authorizing DOJ official on wiretap applications, there can be no "good faith" reliance under the statutory scheme carefully crafted by Congress to limit the use of these electronic interceptions. We will take no part in detracting from Congress's intent "to make doubly sure that the statutory authority be used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications." <u>Giordano,</u> 416 U.S. at 515.

## III.   CONCLUSION

For the reasons stated we affirm the grant of the motions to suppress in this case.

_____