**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 14, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
————————————————————

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GERALD WILSON,

    Defendant - Appellant.

No. 20-3030
(D.C. Nos. 6:18-CV-01178-JTM &
6:13-CR-10112-JTM-12)
(D. Kan.)

————————————————————

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
————————————————————

Before **PHILLIPS**, **MURPHY**, and **McHUGH**, Circuit Judges.
————————————————————

Proceeding pro se,[1] Gerald Wilson seeks a Certificate of Appealability (COA) to

challenge the district court's denial of his 28 U.S.C. § 2255 habeas petition. He argues

that, by not challenging the facial validity of the government's wiretap orders, his trial

counsel provided ineffective assistance of counsel. Because such a Fourth Amendment

challenge would have been meritless, Wilson has not made a substantial showing of a

denial of his Sixth Amendment right to effective assistance of counsel. Nor has he made a

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] In view of Wilson's pro se status, we construe his petition liberally. *E.g.*, *Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018).

colorable claim of actual innocence. Accordingly, we deny a COA and dismiss this case. We grant Wilson's motion to proceed *in forma pauperis*.

## BACKGROUND

On April 1, 2014, a federal grand jury seated in the District of Kansas indicted Gerald Beasley (Beasley), his sons, Antoine Beasley (Antoine Beasley) and Gerald Wilson (Wilson), and nine other defendants in a thirty-four count Second Superseding Indictment. The Indictment charged Wilson with the following crimes:

- Conspiring to distribute and to possess with intent to distribute cocaine (Count 15), in violation of 21 U.S.C. § 846;
- Maintaining a drug-involved premises (Count 29), in violation of 21 U.S.C. § 856;
- Possession of a firearm by a convicted felon (Count 30), in violation of 18 U.S.C. § 922(g);
- Possession of a firearm in furtherance of a drug-trafficking crime (Count 31), in violation of 18 U.S.C. § 924(c); and
- Possessing cocaine with intent to distribute (Count 32), in violation of 21 U.S.C. § 841.

The Indictment was the product of an extensive investigation by numerous federal agencies, including the Bureau of Alcohol, Tobacco, Firearms and Explosives, into the Beasley family's criminal activity. The most productive facet of that investigation involved two wiretaps, one for Beasley's cell phone (Target Telephone # 1, number 316-409-4289) and one for Antoine Beasley's cell phone (Target Telephone # 2, number 316-992-9165). As Wilson admits, the wiretaps produced a "mountain of evidence" incriminating "[him] and all his codefendants." R. vol. 1 at 498.

Both Beasleys moved to suppress evidence obtained from the wiretaps, arguing (among other things) that they were issued without probable cause and in contravention

2

of 18 U.S.C. § 2518(1)(c)'s necessity requirement.[2] Wilson joined the motions, but the district court denied both motions.

Having suffered a significant setback, Wilson decided it was best to cut his losses. On April 19, 2017, he filed in the district court a petition to enter a guilty plea. That same day, Wilson signed a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). In return for the government's promise to dismiss Counts 15, 29, 30, and 31, Wilson agreed to plead guilty to Count 32 (possession of a controlled substance with intent to distribute). As a factual basis for the plea, Wilson admitted that during a search of his Kansas residence officers had found "approximately 931 grams" of cocaine and that he had possessed cocaine with intent to distribute. R. vol. 1 at 473. Wilson's plea agreement contained this waiver provision:

> The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, his conviction, or the components of the sentence to be imposed herein, including the length and conditions of supervised release, as well as any sentence imposed upon a revocation of supervised release. . . . The defendant also waives any right to challenge his sentence, or the manner in which it was determined, or otherwise attempt to modify or change his sentence, in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 (except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)), or a motion brought under Federal Rule of Civil Procedure 60(b).

*Id.* at 476–77. Important here, in an exception following that waiver, the plea agreement states that "[n]otwithstanding the foregoing waivers, the parties understand that the

---

[2] Section 2518(1)(c) requires that the government include in its wiretap application "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous[.]"

3

defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct." *Id.* at 477.

On July 20, 2017, the district court accepted Wilson's plea, sentencing him to seventy months' imprisonment and four years' supervised release.

Less than a year later, on June 21, 2018, Wilson filed a motion under 28 U.S.C. § 2255, seeking to vacate his conviction. Attempting to invoke the exception to his collateral-attack waiver, Wilson raised an ineffective-assistance-of-counsel claim.[3] Specifically, he argued that he had been prejudiced by his counsel's alleged ineffective performance in not raising three arguments: (i) that the wiretap orders were facially insufficient because they stated that "interceptions may take place when the target telephone is located in any other jurisdiction within the United States"; (ii) that the orders were facially insufficient under § 2518(4)(b) for not identifying "the nature and location of the communications facilities as to which, or the place where, authority to intercept is granted"; and (iii) that because the orders failed to provide the necessary location information, they were roving wiretaps, meaning they were improperly authorized by a "Deputy Assistant Attorney General."[4] R. vol. 1 at 488–89, 492, 493–94.

---

[3] Wilson properly brings his ineffective-assistance-of-counsel claim through a collateral challenge rather than through a direct appeal. *See, e.g.*, *United States v. Porter*, 405 F.3d 1136, 1144 (10th Cir. 2005).

[4] A "roving wiretap" allows government agents "to intercept communications to and from any cellular phone number used by the target of an investigation." *United States v. Hermanek*, 289 F.3d 1076, 1087 (9th Cir. 2002); *see also United States v. Shannon*, 766 F.3d 346, 349 n.4 (3d Cir. 2014). To obtain a roving wiretap, an applicant must establish that the actions of the person under investigation "could have the effect of thwarting interception from a specified facility." 18 U.S.C. § 2518(11)(b)(ii). A roving

4

The district court dismissed Wilson's § 2255 petition. *United States v. Wilson*, No. 13-1012-12-JTM, 2020 WL 430218, at *6 (D. Kan. Jan. 28, 2020). Without mentioning or considering the exception to Wilson's collateral-attack waiver, the court concluded that Wilson had presented "no reason it should not be enforced." *Id.* at *2 (citation omitted). That said, the court noted that, under "the [Plea] Agreement and *Cockerham*," Wilson could challenge his counsel's alleged ineffective performance in negotiating his plea agreement. *Id.* at *1. But the court ruled that Wilson's ineffective-assistance claims were unrelated to his plea agreement or waiver and "instead [were] wholly tangential to the final plea agreement and waiver[.]" *Id.*

Despite that ruling, the district court next addressed the merits of Wilson's petition. The court reasoned that, under *Dahda v. United States*, 138 S. Ct. 1491 (2018), his challenge to the geographical scope of the wiretap orders failed because "the expansive geographic language in the warrant[s] was surplusage[.]" *Id.* at *2–3. And though the court reasoned that *Dahda* would have prohibited the government from introducing evidence obtained from a cell phone located outside of Kansas when, at the same time, a listening post had also been outside of Kansas, the record showed that such a situation had never occurred. *See id.* at *3 ("The record does not indicate that any interception of a cell phone located outside of Kansas occurred through the means of a listening post outside of Kansas."). As for Wilson's related argument that the orders were

wiretap must be authorized by "the Attorney General, the Deputy Attorney General, the Associate Attorney General, an Assistant Attorney General, or an acting Assistant Attorney General[.]" *Id.* § 2518(11)(b)(i).

facially insufficient for failing to "explicitly mandate that the listening post be in Kansas," the court concluded that no authority "create[d] the explicit location requirement defendant invokes." *Id.* Finally, the orders did not create roving wiretaps, the court concluded, because they allowed interceptions for only "particular telephones[.]" *Id.* at *4.

The court also noted that Wilson had filed a motion to amend his habeas petition to assert a claim of actual innocence. *Id.* at *5. Wilson argued that his lawyer had misinformed him "that he did not have the right to present evidence of his innocence at trial and that he was guaranteed to lose." R. vol. 1 at 556, 565. Dismissing that claim, the court explained that Wilson's motion failed because it did not create "a colorable showing" of actual innocence, among other things. *Wilson*, 2020 WL 430218, at *5.

After rejecting Wilson's arguments, the court denied a COA, reasoning that reasonable jurists could not debate that Wilson's § 2255 petition was procedurally barred and substantively meritless. *Id.* at *4–6. Wilson now seeks a COA to challenge the district court's dismissal of his § 2255 petition.

## DISCUSSION

### I.      The COA Standard

Wilson must obtain a COA to appeal the district court's dismissal of his § 2255 petition. *See* 28 U.S.C. § 2253(c)(1)(B). We will issue a COA only when a § 2255 petitioner makes "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). Here, the district court dismissed Wilson's petition on both procedural and substantive grounds. *See United States v. Wicken*, 514 F. App'x 721, 723–24 (10th Cir.

2013) (unpublished) (explaining that a court's enforcement of a "plea waiver" is a "procedural" ground for dismissal). Wilson therefore faces a double hurdle: he must show "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling" and "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## II.    Procedural Ruling

We review de novo whether a defendant's collateral-challenge waiver is enforceable. *See United States v. Ibarra-Coronel*, 517 F.3d 1218, 1221 (10th Cir. 2008). In analyzing that issue, we ask three questions: "(1) whether the disputed [claim] falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *United States v. Viera*, 674 F.3d 1214, 1217 (10th Cir. 2012) (alteration in original) (internal quotation marks omitted) (quoting *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam)). When it comes to the scope prong, this court held in *Cockerham* "that a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver." 237 F.3d at 1187; *see also United States v. Ezeah*, 738 F. App'x 591, 594 (10th Cir. 2018) (unpublished) (explaining that "a claim of ineffective assistance of counsel in the negotiation of the plea or waiver" is not waivable under *Cockerham* (citation omitted)). Unlike for ineffective-assistance claims targeting the validity or negotiation of

7

a plea agreement, *Cockerham* ruled that "ineffective assistance of counsel claims that are characterized as falling outside that category are waivable." 237 F.3d at 1187.

Here, the district court concluded that Wilson's § 2255 petition was within the scope of the waiver, meaning that the only claims he could bring were *Cockerham* ineffective-assistance claims. *See Wilson*, 2020 WL 430218, at *1–2, *4. The court explained that, per his waiver, Wilson could challenge "the negotiation or entering of the plea agreement or the waiver" but not issues "wholly tangential to the final plea agreement and waiver[.]" *Id.* at *1 (citation omitted). Wilson's challenge raised the latter, the court reasoned, so it ruled that the waiver barred his § 2255 petition. *Id.*

We conclude that reasonable jurists could debate that procedural ruling. As discussed, Wilson's collateral-challenge waiver contains an exception: "Notwithstanding the foregoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct." R. vol. 1 at 477. Even though Wilson specifically sought to invoke this exception, the district court failed to mention or analyze it. *See Wilson*, 2020 WL 430218, at *1–2. That was in error—under the exception, Wilson retained the right to raise *any* ineffective-assistance-of-counsel claim, not just *Cockerham* claims.[5]

---

[5] Though this court has not weighed in, the Kansas district court has reached differing conclusions about whether this exception preserves claims outside of *Cockerham. Compare United States v. Ellis*, No. 12-20093-01-KHV, 2017 WL 193158, at *4 (D. Kan. Jan. 18, 2017) (relying on this language to conclude that "the plain language of the plea agreement permits all claims of ineffective assistance of counsel (not only those set forth in *Cockerham*)"), *with United States v. Andrews*, No. 07-10221-02, 2011 WL 5921329, at *4 (D. Kan. Nov. 28, 2011) (reasoning that the exception preserved only *Cockerham* claims because it "pertains to 'subsequent' claims and not

8

Reasonable jurists could debate whether Wilson's current arguments fall within the scope of his collateral-challenge waiver; therefore, Wilson has satisfied his burden of showing that the district court's procedural ruling is debatable. Yet to receive a COA, Wilson must also make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

## III. Sixth Amendment Right to Effective Counsel

### A. Deficient Performance and Prejudice

The Sixth Amendment guarantees that "[i]n all criminal prosecutions," a defendant will "have the Assistance of Counsel for his defence." U.S. Const. amend VI. Recognizing that such a guarantee rings hollow when a defendant's counsel stages an objectively inadequate defense, the Court has reasoned that "the right to counsel is the right to the *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added) (citations omitted). "A claim of ineffective assistance of counsel presents a mixed question of law and fact which we review de novo." *Hickman v. Spears*, 160 F.3d 1269, 1273 (10th Cir. 1998) (internal quotation marks omitted) (quoting

---

those claims which are made 'in connection with this prosecution, the defendant's conviction, or the components of the sentence'"), *aff'd on other grounds*, 471 F. App'x 824, 827 (10th Cir. 2012) (unpublished). We agree with *Ellis*'s reasoning. Contrary to *Andrews*'s interpretation, the plain language of the exception allows "*any* subsequent claims," not just *Cockerham* ineffective-assistance claims. R. vol. 1 at 477 (emphasis added). Moreover, *Andrews* distorted the exception's scope by relying on earlier language in the waiver to alter its meaning—the exception explicitly states that it takes effect "[n]otwithstanding the foregoing waivers[.]" *Id.* And even if the exception were ambiguous, we must construe it against the government. *See Hahn*, 359 F.3d at 1325.

9

*Brewer v. Reynolds*, 51 F.3d 1519, 1523 (10th Cir. 1995)); *see also United States v. Holloway*, 939 F.3d 1088, 1097 (10th Cir. 2019).

To show that counsel was constitutionally ineffective, a habeas petitioner must satisfy two elements. First, the petitioner must show that his or her counsel's performance did not meet "an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Second, the petitioner must demonstrate "that the deficient performance prejudiced the defense." *Id.* at 687. When, as here, "defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious[.]"[6] *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). In other words, a habeas petitioner cannot claim that prejudice resulted from his or her counsel's failure to raise a Fourth Amendment challenge if that challenge is groundless. *See id.* at 382 (explaining that "a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment" habeas petition invoking *Strickland*).

That brings us to the key question: are Wilson's Fourth Amendment challenges meritorious? We conclude that they are not.

---

[6] When a state or federal prisoner has had "an opportunity for full and fair litigation of a Fourth Amendment claim," collateral review of the Fourth Amendment issue is generally unavailable. *Stone v. Powell*, 428 U.S. 465, 494–95 (1976); *United States v. Cook*, 997 F.2d 1312, 1317 (10th Cir. 1993) (extending the *Stone* bar to § 2255 petitioners). But "[t]he restrictions on federal habeas review of Fourth Amendment claims announced in [*Stone*] do not extend to Sixth Amendment claims of ineffective assistance of counsel where the principal error of counsel was incompetent representation with respect to a Fourth Amendment issue." *United States v. Owens*, 882 F.2d 1493, 1498 n.5 (10th Cir. 1989) (citing *Kimmelman*, 477 U.S. at 375). We apply this exception here.

10

## B.	Wilson's Fourth Amendment Arguments

First, Wilson argues that, under *Dahda*, the wiretap orders were facially insufficient. In *Dahda*, the Court explained that "the contents of any wire or oral communication" that a wiretap intercepts—and the fruits derived therefrom—must be suppressed if "the order of . . . approval under which it was intercepted is insufficient on its face[.]" 138 S. Ct. at 1494 (omission in original) (internal quotation marks omitted) (quoting 18 U.S.C. § 2518(10)(a)(ii)). An order is insufficient on its face when it fails to include certain statutorily required information. *Id.* at 1498. For instance, because § 2518(4)(e) requires that a wiretap order identify "the period of time during which [the] interception is authorized," an order that does not provide a time period is facially insufficient.[7] *See id.* at 1495 (internal quotation marks omitted).

The issue in *Dahda* was whether a wiretap order that contained all the required information was otherwise facially insufficient for purporting to authorize interceptions beyond the court's territorial jurisdiction. *Id.* at 1494, 1496–97. The Court first explained that "an order can permit the interception of communications 'within the territorial

---

[7] Section 2518(4) requires that a wiretap order contain the following information:

> (a) the identity of the person, if known, whose communications are to be intercepted; (b) the nature and location of the communications facilities as to which, or the place where, authority to intercept is granted; (c) a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates; (d) the identity of the agency authorized to intercept the communications, and of the person authorizing the application; and (e) the period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained.

11

jurisdiction of the court in which the judge is sitting.'" *Id.* at 1495 (quoting 18 U.S.C. § 2518(3)). Second, the parties did not dispute, and the Court appeared to agree, "that an intercept takes place *either* where the tapped telephone is located *or* where the Government's 'listening post' is located." *Id.* (citing § 2510(4)). The problem in *Dahda* was that the orders allowed interception when neither the phone nor the listening post was within the court's territorial jurisdiction:

> It is further Ordered that, in the event TARGET TELEPHONE # 1, TARGET TELEPHONE # 3 and TARGET TELEPHONE # 4, are transported outside the territorial jurisdiction of the court, interception may take place in any other jurisdiction within the United States.

*Id.* (alteration and emphasis removed).

Even though this jurisdictional issue created a defect in the orders, the Court concluded that the defect did not render them facially insufficient. *Id.* at 1498–99. Because the orders were otherwise valid and included the required information, the challenged sentence was simply "surplus" and entirely "without legal effect"—the district court had no power in the first place to "legally authorize a wiretap outside [its] 'territorial jurisdiction.'" *Id.* at 1499. Moreover, the Court reasoned that "the statute itself presumptively limits every Order's scope to the issuing court's territorial jurisdiction." *Id.*

Here, the language that Wilson challenges is nearly identical to the language in *Dahda*:

> IT IS ORDERED FURTHER that in the event that the target facility is transferred outside the territorial jurisdiction of this court, interceptions may take place when the TARGET TELEPHONE is located in any other jurisdiction within the United States.

12

R. vol. 1 at 577. Like in *Dahda*, this language is "surplus"—it purports to allow interceptions when neither the target phone nor the government's listening post is within the court's territorial jurisdiction. But, contrary to Wilson's argument, the *Dahda* Court concluded that such a defect does not render an entire order facially invalid.[8] Accordingly, Wilson's first argument is meritless.

By another route, Wilson's second argument also tries to establish that the orders were facially insufficient. Under 18 U.S.C. § 2518(4)(b), an order must contain "the nature and location of the communications facilities as to which, or the place where, authority to intercept is granted[.]"[9] Wilson admits "that the order[s] identified the target cell phone[s]," R. vol. 1 at 492, and he does not dispute the district court's finding that the orders are "directed at cellular telephone numbers assigned to a Kansas area code (316) with a listed Kansas address (in the City of Andover)," *Wilson*, 2020 WL 430218, at *3. But according to Wilson, this cell phone-location information is immaterial—a cell phone cannot count as a communications facility. He reasons that "the location of the listening post" is instead required because "interceptions do not take place at the location of the cell phone." R. vol. 1 at 491–92.

---

[8] Significantly, the district court here explicitly noted that "[t]he record does not indicate that any interception of a cell phone located outside of Kansas occurred through the means of a listening post outside of Kansas." *Wilson*, 2020 WL 430218, at *3. Wilson does not challenge that finding. So we fail to see how Wilson suffered any prejudice. *See Dahda*, 138 S. Ct. at 1494 (reasoning that the Dahdas had suffered "no significant adverse effect" when "none of the communications unlawfully intercepted outside the judge's territorial jurisdiction were introduced at trial").

[9] The statute does not define the term "communications facilities." *United States v. Scurry*, 821 F.3d 1, 14 (D.C. Cir. 2016).

13

Wilson is wrong on both counts: cell phones *are* communication facilities and intercepts *do* occur at the location of the cell phone. *See, e.g.*, *United States v. Dahda*, 853 F.3d 1101, 1112 (10th Cir. 2017) ("Thus, an 'interception' under Title III occurs both where the tapped telephones are located and where law enforcement officers put their listening post."), *aff'd on other grounds*, 138 S. Ct. 1491; *United States v. Scurry*, 821 F.3d 1, 14 (D.C. Cir. 2016) (concluding that "Congress intended the word 'facilities' in sub-sections 2518(1)(b)(ii) and (4)(b) to encompass cell phones themselves"); *United States v. Hermanek*, 289 F.3d 1076, 1086 n.3 (9th Cir. 2002) ("A cellular phone number is a 'communications facility.'"); *United States v. Ramirez*, 112 F.3d 849, 852 (7th Cir. 1997) ("An interception takes place both where the phone is located . . . and where the scanner used to make the interception is located." (citations omitted)).[10] Here, Wilson admits that "the order addressed the nature of the cell phone when it identified the [IMSI] [international mobile subscriber identity number] and cell phone number in the order." R.

---

[10] Citing *United States v. Harpel*, 493 F.2d 346, 351 (10th Cir. 1974), Wilson argues that "interceptions do not take place at any telephone." R. vol. 1 at 541. In *Harpel*, a jury convicted Harpel after he unlawfully intercepted a telephone conversation between law-enforcement officers. 493 F.2d at 348. The trial evidence showed that "[t]here were numerous telephone extensions in the offices at both ends of the conversation[.]" *Id.* at 348. Harpel argued that he had not intercepted any wire communication, because "there can be no interception when a telephone extension is used[.]" *Id.* at 350; *see also* 18 U.S.C. § 2510(5)(a). We agreed, explaining that if a defendant acquired a communication by using "a telephone employed by the subscriber or user in the ordinary course of its business," no interception would occur. *Harpel*, 493 F.2d at 351. But because Harpel had likely intercepted the conversation "by attaching a suction cup to a telephone receiver," not by using a telephone in the ordinary course of business, he could not benefit from that exception. *Id.* at 348, 351–52. Contrary to Wilson's argument, *Harpel* does not define where an interception occurs—it merely establishes that an interception does not occur if a defendant acquires a communication using a telephone in the ordinary course of business. *Id.* at 351.

vol. 1 at 492. The district court also explained that the wiretap orders listed a Kansas area code and address. *Wilson*, 2020 WL 430218, at *3. This information was all that was needed. *See, e.g.*, *United States v. Oliva*, 705 F.3d 390, 396 n.4 (9th Cir. 2012) ("Although the 'nature and location' of a cellular phone cannot be described in the same way as that of a land line phone, a cellular phone is itself a 'facilit[y]' that can be sufficiently identified by such features as its telephone number, electronic serial number (ESN) or international mobile subscriber identity number (IMSI)." (alteration in original) (citation omitted)); *United States v. Goodwin*, 141 F.3d 394, 403 (2d Cir. 1997) ("The government's affidavits in support of its application clearly identified the facilities to be tapped by their telephone numbers and by their electronic serial numbers. The requirements of 18 U.S.C. §§ 2518(1)(b)(ii) and 2518(4)(b) were therefore satisfied . . . .").

Finally, Wilson argues that the government "actually obtained a roving wiretap." R. vol. 1 at 495. To support that argument, he builds on his theory that "cell phones do not have fixed locations" and, therefore, cannot count as "facilities." *Id.* at 493. And because the orders identified cell phones and not listening posts, Wilson contends that the orders cannot qualify as ordinary wiretaps—instead, they are roving wiretaps. *See* 18 U.S.C. § 2518(11) (allowing the government to obtain a roving wiretap without identifying "the facilities from which, or the place where, the communication is to be intercepted").

But we have already concluded that, by identifying the cell phones' numbers, IMSIs, Kansas area codes, and Kansas address, the wiretap orders included the facility-

15

location information needed for an ordinary wiretap. That conclusion undercuts Wilson's

argument that the wiretaps are necessarily roving wiretaps simply because they give the

location for cell phones, not the listening posts. *E.g. Goodwin*, 141 F.3d at 403 (rejecting

as "plainly incorrect" the reasoning "that because one may rove about with a cellular

telephone interception of a cellular telephone is necessarily a 'roving wiretap'"); *see also*

*Scurry*, 821 F.3d at 14.[11] Like Wilson's other arguments, we conclude that this argument

is meritless.

### C. Wilson's Actual-Innocence Argument

Finally, Wilson challenges the district court's rejection of his actual-innocence

claim. Wilson asserts that, a year before he was indicted, officers allegedly found cocaine

in his house while responding to an incident in which a woman attacked him with a

crowbar. Even though he contends that he had nothing to do with the Beasley family's

criminal activity, Wilson alleges that the government indicted him for this past conduct in

the hopes that he would be willing to testify against them at trial. As for why he pleaded

---

[11] Wilson also argues that the wiretap orders' substance shows that they are roving wiretaps. First, he argues that the orders permitted interceptions "if the phone is off the hook or not in use[.]" R. vol. 1 at 495. Second, he points out that the orders allowed interception at "any changed telephone number or any other telephone subsequently assigned to or used by the instrument bearing the same ESN or IMSI as the target telephone." *Id.* at 494. Neither of these characteristics convert a wiretap into a roving wiretap. *See, e.g.*, *United States v. Gordon*, 871 F.3d 35, 43–44 (1st Cir. 2017) ("We can think of no good reason why Title III's particularity requirement should be read as limiting a wiretap to a specific telephone number rather than a specific ESN or IMEI number reasonably believed to be used by the target."); *id.* (noting that the "off-the-hook" language "is standard fare in wiretap applications and its inclusion does not make the wiretap orders impermissibly broad" (citation omitted)); *Oliva*, 705 F.3d at 399 ("The 'off the hook' language, however, lacks meaning when applied to cellular phones.").

guilty, Wilson states that his "defense counsel colluded with the government's attorney and advised him to plead guilty." R. vol. 1 at 569.

We agree with the district court that these allegations do not create a "colorable showing" of actual innocence. *Wilson*, 2020 WL 430218, at *5. We have explained that, "[t]o be credible, [an actual-innocence] claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence[.]" *Postelle v. Carpenter*, 901 F.3d 1202, 1225 (10th Cir. 2018) (first alteration in original) (internal quotation marks and citation omitted). Wilson presents no new evidence whatsoever. What is more, Wilson admitted in his original habeas petition that the wiretaps produced "a mountain of evidence" incriminating "[him] and all his codefendants." R. vol. 1 at 498. Wilson's crampons make no dent in that mountain.

## CONCLUSION

We conclude that reasonable jurists could debate the district court's conclusion that Wilson's ineffective-assistance claim fell within the scope of his collateral-attack waiver. Even so, reasonable jurists could not debate whether he received constitutionally ineffective assistance of counsel—Wilson's Fourth Amendment arguments and actual-innocence claim are meritless. Accordingly, we deny a COA and dismiss this case. We grant his motion to proceed *in forma pauperis*.[12]

Entered for the Court

Gregory A. Phillips
Circuit Judge

---

[12] Wilson has provided a financial affidavit showing he has no assets or income and cannot not prepay the filing fees. He has also presented one reasoned, nonfrivolous argument on appeal—namely, his argument concerning the facially validity of the wiretaps. Thus, he is entitled to *in forma pauperis* status on appeal. *See Johnson v. Raemisch*, 763 F. App'x 731, 735 (10th Cir. 2019) (unpublished) (granting an *in forma pauperis* motion when the applicant was unable to pay the filing costs and raised "at least one nonfrivolous argument on appeal"). Even so, Wilson must make partial payments until the filing fee is fully paid. 28 U.S.C. § 1915(b)(1)–(2).