**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**TENON CIRCUIT**

**December 14, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SERGIO DANIEL SAUZAMEDA,
also known as David Luna-Gomez,

Defendant - Appellant.

No. 20-2151
(D.C. No. 1:17-CR-02583-JCH-1)
(D. N.M.)

## ORDER AND JUDGMENT[*]

Before **McHUGH**, **MURPHY**, and **CARSON**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is, therefore,
submitted without oral argument.

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

## I. INTRODUCTION

A grand jury indicted Sergio Sauzameda on charges he, *inter alia*, conspired to distribute methamphetamine and heroin, in violation of 21 U.S.C. §§ 841, 846. In response to the indictment, Sauzameda filed a motion to suppress, asserting the affidavit in support of a wiretap order for a relevant cellular phone ("Romero Phone 4") did not establish probable cause to intercept voice communications. The district court denied the suppression motion and Sauzameda entered into a conditional plea agreement. He agreed to plead guilty to a two-count information charging both conspiracy to distribute and actual distribution of methamphetamine, but reserved the right to appeal the district court's denial of his motion to suppress.

Sauzameda asserts the district court erred in concluding the wiretap order for voice communications over Romero Phone 4 was supported by probable cause. This argument is unconvincing. The affidavit in support of the wiretap order, particularly the history of drug-distribution related communications over Romero Phones 1 through 3, established a fair probability that voice communications over Romero Phone 4 would relate to past, current, or impending drug offenses. Accordingly, the district court correctly denied Sauzameda's motion to suppress. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** the order of the district court.

## II.  BACKGROUND

### A.  Legal Background

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (the "Act"), codified at 18 U.S.C. §§ 2510 to 2522, governs the issuance of orders authorizing the interception of, *inter alia*, wire and electronic communications. Interception and disclosure of such communications is generally prohibited.  *Id.* § 2511.  Upon a proper application, however, a federal judge may authorize such interception to help prevent, detect, or prosecute serious federal crimes.  *Id.* § 2516.  Before authorizing a wiretap, Title III of the Act requires a judge to find probable cause supporting issuance of the order.  *Id.* § 2518(3)(a).  In furtherance of that requirement, Title III sets forth detailed requirements governing both the application for a wiretap and any judicial order ultimately authorizing a wiretap. *See id.* § 2518; *see also Dahda v. United States*, 138 S. Ct. 1491, 1495 (2018).  A wiretap application must be in writing, upon oath or affirmation, to a federal "judge of competent jurisdiction."  18 U.S.C. § 2518(1).  It must include "a particular description of the type of communications sought to be intercepted," *id.* § 2518(1)(b)(iii), and "probable cause for belief that particular communications concerning [an enumerated] offense will be obtained through such interception," *id.* § 2518(3)(b).  It is this second requirement—that a wiretap application establish probable cause to believe each type of communication sought to be

-3-

intercepted will concern an enumerated crime—that is the narrow issue before the court in this appeal.[1]

The facts and circumstances set out in a wiretap application must establish "probable cause to believe a particular offense has been, is being, or is about to be committed, and that conversations related to the offense will be overheard" on the subject telephone. *United States v. Armendariz*, 922 F.2d 602, 607 (10th Cir. 1990); *see* 18 U.S.C. § 2518(3)(a)–(b). Probable cause has the same meaning in the wiretap context as it does in any other. *Armendariz*, 922 F.2d at 608. Thus, a wiretap application must convince a judge "the facts and circumstances within the officer's knowledge," as stated therein, are "based on reasonably trustworthy information" and "sufficient to warrant a person of reasonable caution to believe an offense has or is being committed." *Id.* Whether probable cause exists is evaluated by examining the "totality-of-the-circumstances" and involves "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that . . . evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Probable cause may be established through factual information about previously monitored conversations over the subject telephone, telephone data linking the

---

[1]*See* Appellant's Reply Br. at 2 ("Mr. Sauzameda's argument is that one of [the] two particular forms of communication [intercepted over Romero Phone 4]—phone calls—is unsupported by probable cause.").

subject telephone to drug-trafficking activity, statements from confidential sources, physical surveillance, or other relevant evidence. *See United States v. Apodaca*, 820 F.2d 348, 350 n.2 (10th Cir. 1987). Evidence used to establish probable cause for one device can be used to show a new device is being used for a similar purpose. *See United States v. Scurry*, 821 F.3d 1, 16 (D.C. Cir. 2016); *see also id.* (recognizing "drug traffickers frequently switch phones to avoid police detection"). Ultimately, probable cause is a flexible standard and there is no bright-line rule as to the type of evidence upon which a court may rely when evaluating a wiretap application.

## B.  Factual Background

Drug Enforcement Agency Task Force Officer Adam Gaitan sought interception of text and voice communications over Romero Phone 4. Gaitan's affidavit identified Orlando Romero as a convicted drug trafficker, the "highest leader/organizer" in his trafficking organization, and a source of supply to other dealers. R. Vol. I at 80. Gaitan also identified Romero's mother and girlfriend as fellow drug traffickers. Gaitan described the criminal investigation in detail, beginning with information from a confidential source that Romero distributed drugs in Albuquerque, New Mexico, for the "Los Padillas" gang and that he had several different sources of supply.

Gaitan confirmed Romero was selling controlled substances by purchasing heroin and/or methamphetamine from Romero on four separate occasions over a six-month period.  During that period, Gaitan communicated with Romero, by both text messages and voice calls, on four cellular phones to arrange the drug transactions.  In October 2015, Romero arranged a drug transaction using text messages via a cellular phone ("Romero Phone 1").  In November 2015, Romero arranged another drug transaction using text messages via a second cellular phone ("Romero Phone 2").  In January 2016, Romero arranged a third drug transaction using both text messages and a voice call via a third cellular phone ("Romero Phone 3").  In February 2016, Romero discussed a future drug transaction using text messages via Romero Phone 3.  In March and April 2016, Romero arranged a fourth drug transaction using text messages and voice calls via Romero Phone 3, and a voice call via Romero Phone 2.  Romero initiated every voice call to Gaitan.

In April 2016, Romero arranged a future drug transaction in a text conversation using Romero Phone 4.  Romero confirmed to Gaitan that he had changed his phone number and Romero Phone 4 was his new number.  Based on this exchange and Romero's use of three prior phone numbers, Gaitan concluded Romero changed his phone number every two to three months.  Due to multiple factors, including the familiar wording and syntax, the drug-related subject matter, the use of Gaitan's undercover name, and a reference to a mutual friend,

-6-

Gaitan concluded Romero also used Romero Phone 4 to facilitate drug transactions. This comported with Gaitan's training and experience in other drug investigations that drug traffickers use a combination of voice and text communications to direct the day-to-day activities of their organizations.

Gaitan supported his application with toll analysis of the calls and texts sent to and received by Romero Phone 4. Over a three-week period, Romero Phone 4 made and received a total of approximately 519 calls and 809 text messages. Gaitan identified 122 calls and six texts made to or from a phone believed to be used by Romero's girlfriend. Romero's girlfriend was previously convicted in a drug trafficking conspiracy with Romero. Gaitan determined voice communications between Romero and his girlfriend had occurred at a frequency of more than thirty times per day over Romero Phone 3. Furthermore, Gaitan identified thirty calls and five texts over Romero Phone 4 with Clayton Arellano. Arellano was a large-scale heroin trafficker and member of the Los Padillas gang according to corroborated information obtained from a confidential source. Therefore, nearly one third of the voice calls made during that three-week period were with a suspected drug trafficker. Finally, Gaitan discussed how multiple phones were subscribed in the name of Romero's mother, including Romero Phone 3; the phone used by Romero's girlfriend; and a third phone, which was also in contact with Romero Phone 4. Gaitan noted it was reasonable to believe

-7-

Romero's mother used her name on the various phone lines to conceal the true identity of the phone user and evade detection by law enforcement.

Based on the information set out in Gaitan's application, the district court authorized the interception of wire and electronic communications over Romero Phone 4 for a period not to exceed thirty days.  During that period, agents intercepted calls relating to drug trafficking, including such calls between Romero and Sauzameda.  Special Agent David Howell submitted an affidavit, based in part on the drug-trafficking calls intercepted over Romero Phone 4, in support of an application for an order authorizing the interception of wire and electronic communications over Sauzameda's cellular phone.  Based upon evidence collected during these wiretaps and the ongoing investigation, a grand jury charged Sauzameda, Romero, and others with conspiracy to distribute methamphetamine.

## C.  Procedural Background

Sauzameda moved to suppress the wiretap evidence on the ground that, *inter alia*, the affidavit for Romero Phone 4 failed to establish probable cause to support wire interception.[2]  Sauzameda noted Gaitan's affidavit did not identify

---

[2]Sauzameda argued, both before the district court and in his opening brief on appeal, that because the wiretap order for Romero Phone 4 was unlawful, the spin-off order for a wiretap of his phone was fruit of the poisonous tree. *See United States v. Giordano*, 416 U.S. 505, 531-32 (1974); 18 U.S.C. § 2518(10).

(continued...)

any recorded calls discussing drug trafficking over Romero Phone 4. Sauzameda acknowledged the affidavit established Romero had, in recent past practice, used both calls and text messages to communicate with Gaitan about drug trafficking. And he effectively conceded probable cause existed to support the interception of electronic communications. He, nevertheless, asserted there did not exist probable cause to intercept voice calls because Gaitan's affidavit did not indicate that any such calls had occurred over Romero Phone 4. R. vol. 1 at 66 ("While affiant arguably established probable cause that [Romero Phone 4] was utilized to facilitate drug trafficking activities through text messaging only, no evidence was established to show [it] was utilized via wire communications (voice communications).").

The district court denied Sauzameda's suppression motion. It concluded Gaitan's affidavit contained "sufficient information to establish separate, independent probable cause for interception of both wire and electronic communication over Romero Phone 4." *Id.* at 405. The district court determined the record of previous calls and text messages with Romero about drug trafficking on multiple prior phones established reason to believe future drug-trafficking

---

[2](...continued)
Because the government does not contest this assertion, and because the affidavit in support of the wiretap of Romero Phone 4 established probable cause to believe voice communications over that phone would involve drug trafficking, this court does not consider this matter further.

communications would occur via both methods over new phones used by Romero. The district court also indicated Gaitan's affidavit sufficiently established Romero's girlfriend and Clayton Arellano were connected to Romero's drug-trafficking activity. Therefore, it determined the toll records "provide[d] additional support that there was a fair probability that [Romero Phone 4] was used for drug transactions." *Id.* at 407. The district court concluded that

> based on the totality of the evidence, viewed in a commonsense manner, the affidavit in support of the application to intercept Romero Phone 4 contained sufficient facts to warrant a person of reasonable caution to believe that evidence of narcotics crimes would be found through the interception of both wire and electronic communications over Romero Phone 4.

*Id.*

## III.  ANALYSIS

### A.  Standard of Review

As both parties recognize, this court reviews a "district court's finding of probable cause for a wiretap under the same standard used for a search warrant." *Armendariz*, 922 F.2d at 608. That is, this court reviews "de novo the district court's determination of probable cause." *United States v. Tuter*, 240 F.3d 1292, 1295 (10th Cir. 2001). In so doing, however, this court gives "great deference to the issuing judge's finding of probable cause," and "ask[s] only whether, under the totality of the circumstances presented in the affidavit, the [issuing] judge had a substantial basis for determining that probable cause existed." *United States v.*

*Haymond*, 672 F.3d 948, 958–59 (10th Cir. 2012) (quotation omitted). All

evidence is viewed in the light most favorable to the government. *United States*

*v. Iiland*, 254 F.3d 1264, 1268 (10th Cir. 2001).

**B.  Discussion**

Sauzameda concedes Gaitan's affidavit in support of the application for the

wiretap of Romero Phone 4 contained sufficient probable cause to intercept text

messages. His appellate arguments focus narrowly on whether the district court

erred in ruling those same facts established probable cause to intercept phone

calls. Gaitan's affidavit, however, established probable cause by providing

information Romero had used, and would continue to use, his frequently changing

cellular phones in the same manner as previous cellular phones—to facilitate his

drug-distribution activities by *both* phone calls and text messages. The

information about the investigation, undercover purchases, recorded

conversations, and other investigative efforts was sufficient to warrant a person of

reasonable caution to believe Romero and others were distributing drugs, and

communications about drug trafficking would be intercepted over Romero Phone

4.

Notably, Sauzameda does not argue there is insufficient probable cause to

establish Romero was a drug trafficker who used Romero Phone 4. This fact

itself weighs in favor of probable cause. *See United States v. Barajas*, 710 F.3d

1102, 1108–09 (10th Cir. 2013). This admission, furthermore, means Gaitan's affidavit established that Romero Phone 4 was a place of criminal activity. *See United States v. Nunez*, 877 F.2d 1470, 1473 n.1 (10th Cir. 1989); *see also United States v. Urban*, 404 F.3d 754, 773 (3d. Cir. 2005). Gaitan's affidavit established, based on criminal history, surveillance, and corroborated information from confidential sources, that Romero, Romero's girlfriend, and Clayton Arellano were drug traffickers. Gaitan also described purchasing either heroin or methamphetamine directly from Romero on four separate occasions over a six-month period. Gaitan detailed how each of those transactions was predicated by communications about the drug transaction with Romero over a cellular phone. During that period, Romero used four different cellular phone numbers, leading Gaitan to conclude Romero switched his phone every two or three months. Of the four cellular phones, Romero communicated via text on all four and via voice on two prior to switching to Romero Phone 4. Romero initiated every voice call with Gaitan. Based on his training and experience, and his direct experience with Romero, Gaitan concluded Romero would use a combination of voice and text communications to direct the day-to-day activities of his drug-trafficking organization. Indeed, the text message exchange captured on Romero Phone 4 suggested Romero was no longer using the previous phones, but would instead be using Romero Phone 4 to further his drug trafficking. These facts established that

-12-

Romero Phone 4 would be used to facilitate drug trafficking and that, based on Romero's recent past practice, he would likely use the phone for voice communications as well.

Gaitan's conclusions were also supported by toll analysis. Over the course of approximately three weeks, toll records from Romero Phone 4 showed nearly 152 calls, out of a total of 519 calls, between Romero and other drug traffickers, i.e., Romero's girlfriend and Clayton Arellano. Romero's girlfriend, who was responsible for 122 of those calls, was previously convicted in a conspiracy to distribute controlled substances with Romero in 2012, lived with Romero at the time of the investigation, and drove a newer luxury vehicle far beyond her and Romero's reported income. Furthermore, agents observed Romero's girlfriend conducting counter-surveillance at one of Romero's suspected stash houses where agents had recovered evidence of drug packaging in a trash pull. Gaitan's affidavit indicated Romero's girlfriend called one of Romero's previous phones at a rate of over thirty times per day. Gaitan concluded Romero's girlfriend's behavior was consistent with drug trafficking and, therefore, voice calls between Romero and his girlfriend may then include conversations about drug trafficking.

Gaitan's affidavit also established that Romero Phone 4 had voice communications with Clayton Arellano. Gaitan linked Arellano to a multi-pound methamphetamine distribution scheme in 2015 in which agents suspected

Arellano supplied the drugs which were to be sold to an undercover officer.  And two sources of information identified Arellano as a multi-pound drug distributor for the Los Padillas gang.  The thirty calls with Arellano, over the three-week period, were independent evidence supporting probable cause.

The recorded calls and texts between Romero and Gaitan, as well as the heavy use of Romero Phone 4 and numerous communications—both calls and texts—with Romero's girlfriend's and Arellano's phones, reasonably established that Romero was using Romero Phone 4 to communicate with others about drug trafficking and that calls and texts about drug trafficking would be intercepted over Romero Phone 4.  Thus, probable cause existed for the interception of wire communications over Romero Phone 4 and the wiretaps of both Romero Phone 4 and Sauzameda's phone were lawful.

## IV.  CONCLUSION

For those reasons set out above, the order of the United States District Court for the District of New Mexico denying Sauzameda's motion to suppress is hereby **AFFIRMED**.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge

-14-